IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

|  |  |
|---|---|
| THOMAS DEEB & MARIE BEUG-DEEB, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES OF AMERICA, <br><br> Defendant. | CIVIL ACTION FILE <br><br> NO. 1:20-CV-1456-TWT |

## OPINION AND ORDER

This is an action seeking a federal income tax refund. It is before the Court on the Defendant's Motion for Summary Judgment [Doc. 29]. For the reasons set forth below, the Defendant's Motion for Summary Judgment [Doc. 29] is GRANTED.

### I. Preliminary Matters

In support of its Motion for Summary Judgment, the United States filed a Statement of Undisputed Material Facts. The Plaintiffs Thomas M. Deeb and Marie U. Beug-Deeb ("the Deebs") filed a response to these facts. In violation of Local Rule 56.1(B)(2)(a)(2), many of the statements in response to the United States' facts fail to directly refute the United States' facts "with concise responses supported by specific citations to evidence (including page or

paragraph number)."[1] For this reason, the Court deems admitted Paragraphs 1, 2, 9, 11, 13–15, 27, and 29–38 of the facts presented by the United States.

Furthermore, instead of filing a separate statement of additional material facts, the Plaintiffs included additional material facts only in their response brief. This Court's Local Rules do not permit parties to combine their statement of material facts with their brief. N.D. Ga. Local R. 56.1(B)(1). In addition to not filing a separate statement of additional material facts, the Plaintiffs' facts are not numbered, and many are "not supported by a citation to evidence (including page or paragraph number)." N.D. Ga. Local R. 56.1(B)(1)(b). The Court therefore disregards the Plaintiffs' Statement of Additional Material Facts.

## II. Background

### A. T&M Associates Baku

In April of 2010, Thomas Deeb founded T&M Associates Baku, an Azerbaijani corporation and consulting company focused on food safety, public health, and economic development. (Def.'s Statement of Undisputed Material Facts in Supp. of Def.'s Mot. for Summ. J. ¶¶ 1, 5.) T&M Associates Baku closed in 2013 when Deeb moved to Saudi Arabia. (*Id.* ¶ 2.) T&M Associates was a

---

[1] The Plaintiffs refer the Court generally to Exhibit O to support many of their statements in response. However, Exhibit O consists of 314 pages. (*See* Doc. 32-12.) Without references to specific pages, the citations to this exhibit are not helpful.

separate corporation and a subcontractor to T&M Associates Baku. (*Id.* ¶ 3.) Marie Beug-Deeb had no involvement with T&M Associates Baku. (*Id.* ¶ 4.)

Deeb was the general manager and owner of T&M Associates Baku. (*Id.* ¶ 6.) He obtained contracts for the company, worked with clients, and engaged in other activities for the entity. (*Id.*) Deeb maintained a daily work calendar to describe where he was and what projects he was working on each day. (*Id.* ¶ 7.) He stated that the work calendar "[said] what type of work was being done. So it's a documentation about work, as well as where." (*Id.* ¶ 8; Deeb Dep. at 42:3–6.) From April 3, 2010 through December 31, 2010, Deeb spent close to 70% of his time in Baku (including weekends) working for T&M Associates Baku. (Def.'s Statement of Undisputed Material Facts in Supp. of Def.'s Mot. for Summ. J. ¶ 9.) He spent only about 9.5% of his time in Atlanta, Georgia, and according to his work calendar, did not work during those times.[2] (*Id.*)

In 2011, Thomas Deeb spent approximately 60% of his time in Baku (including weekends) working for T&M Associates Baku. (*Id.* ¶ 11.) He spent only 18% of his time in Atlanta, Georgia, and according to his work calendar, did not work during those times, except for one day in August.[3] (*Id.*) Specifically, his 2011 calendar lists only one day—August 12, 2011—as a "work day" while in Atlanta. (*Id.* ¶ 13.) Deeb helped to prepare a log of the revenue

---

[2] The Plaintiffs claim that Deeb performed administrative work during the time he was in Atlanta, but the evidence cited by the Plaintiffs, Deeb's work calendar, does not support that contention.

[3] The Plaintiffs again claim, without supporting evidence, that Deeb performed administrative work while in Atlanta.

and expenses T&M Associates Baku generated and incurred in 2011. (*Id.* ¶ 14.) Deeb calculated his travel expenses based on M&IE per diem rates, as well as certain federal housing allowances. (*Id.* ¶ 15.) He claims his travel dates were recorded in the calendar produced to the United States. (*Id.*)

### B. Federal Income Tax Filings and Examination by IRS

On or about January 3, 2013, the Deebs filed their joint federal income tax return for tax year 2011, seeking a refund of $30,465.00. (*Id.* ¶ 16.) Deeb self-prepared the Deebs's joint 2010 and 2011 federal income tax returns using Turbotax. (*Id.* ¶ 17.) The Deebs's 2011 tax return claimed the following business expenses as deductions from income:

- Contract Labor: $79,775;
- Legal and professional fees: $1,471;
- Supplies: $1,230;
- Taxes and licenses: $9,784;
- Travel: $95,466;
- Utilities: $2,086; and
- Other Expenses ("other"): $7,573

(*Id.* ¶ 18.)

On or about August 20, 2013, the Internal Revenue Service ("IRS") examined the Deebs's 2011 return and disallowed these deductions, which resulted in a tax deficiency of $51,180.00 that was assessed against the Deebs on September 15, 2014. (*Id.* ¶¶ 19, 20.) In addition to the tax deficiency, an accuracy-related penalty in the amount of $10,436.00 was assessed against the Deebs. (*Id.* ¶ 21.) In total, as a result of its audit adjustments to their 2011 return, the IRS assessed over $80,000.00 against the Deebs in additional tax

due, accuracy penalty, penalties for late filing of return, payment, and interest. (*Id.* ¶ 22.)

### C. Refund Claim

On April 15, 2015, the IRS applied the Deebs's tax overpayment from their 2012 return of $24,013.80 in partial satisfaction of their tax liability for 2010. (*Id.* ¶ 23.) The balance of the assessments was satisfied by a credit that the Deebs reported on their 2013 return and carried back to tax year 2010. (*Id.*)

On April 15, 2016, the IRS applied the Deebs's tax overpayment from their 2015 return of $16,538.00 in partial satisfaction of their tax liability for 2011. (*Id.* ¶ 24.) On May 11, 2017, the Deebs remitted a payment of $46,284.30 on account of the assessments described above. (*Id.*) The balance of the assessments was satisfied by a credit that the Deebs reported on their 2013 and 2014 returns and carried back to tax year 2011. (*Id.*)

On or about April 12, 2018, the Deebs filed a Form 843: Claim for Refund and Request for Abatement for tax years 2010 and 2011 to recover the payment of $24,013.80 made for tax year 2010 and the payments of $16,538.00 and $46,284.30 made for tax year 2011. (*Id.* ¶ 25.) In the written explanation for their refund claim, the Deebs disagreed with the IRS's disallowance of deductions they claimed on their 2010 and 2011 returns. (*Id.* ¶ 26; Doc. 32-6 at 5.) Specifically, the Deebs claimed that "[f]or tax year 2011, the taxpayer was entitled to deduct Schedule C1-Other Expenses of $7,573.00 and Travel of $95,466.00. The Service also assessed penalties in the amount of . . .

$15,945.00." (Def.'s Statement of Undisputed Material Facts in Supp. of Def.'s Mot. for Summ. J. ¶ 26.) The Deebs provided no substantiation for those deductions with their refund claim, but instead recited their understanding of the Internal Revenue Code provisions governing deductions for business travel.[4] (*Id.* ¶ 27.) The Deebs's refund claim makes no specific mention of the IRS's disallowance of the deductions they claimed for contract labor, legal and professional fees, supplies, taxes and licenses, or utilities. (*Id.* ¶ 28.) The Deebs generally stated that "[t]he Service erred in removing deductions of $132,788.00 and $184,613.00, respectfully" and that "[t]he taxpayers were entitled to these business deductions." (Pl.'s Response to Def.'s Statement of Undisputed Material Facts in Supp. of Def.'s Mot. for Summ. J., Ex. G, at 5.)

### D. Substantiating Documentation

The documentation for their claimed deductions that the Deebs provided the United States during discovery consisted of a summary of expenses that Mr. Deeb assisted with preparing and certain airplane ticket receipts. As to alleged travel expenses to/from Atlanta and Baku, and within Baku, the Deebs claimed they spent $28,520.40:

- January – Transportation, communication expenses, M&IE: $2,309.20;
- February – Transportation, communication expenses, M&IE: $3,406.70;

---

[4] There is a statement in the Plaintiffs' Exhibit G that they "enclosed documentation to provide evidence that the taxpayers were entitled to these deductions." (Pl.'s Response to Def.'s Statement of Undisputed Material Facts in Supp. of Def.'s Mot. for Summ. J., Ex. G, at 5.) However, the Plaintiffs cite to no evidence of what substantiating documentation they actually provided with their refund claim in 2018. As such, the Court deems admitted Paragraph 27 of the United States' Statement of Undisputed Material Facts.

- March – Transportation, communication expenses, M&IE: $2,643.70;
- April – Transportation, communication expenses, M&IE: $3,034.70;
- May – Transportation, communication expenses, M&IE: $1,915.20;
- June – Transportation, communication expenses, M&IE: $3,182.70;
- July – Transportation, communication expenses, M&IE: $2,504.70;
- August – Transportation, communication expenses, M&IE: $1,573.70;
- September – Transportation, communication expenses, M&IE: $2,028.70;
- October – Transportation, communication expenses, M&IE: $2,003.70;
- November – Transportation, communication expenses, M&IE: $2,231.70;
- December – Transportation, communication expenses, M&IE: $1,685.70;

(Def.'s Statement of Undisputed Material Facts in Supp. of Def.'s Mot. for Summ. J. ¶ 29.)

For travel to/from other places and Baku, the Deebs claimed they spent $4,640.58:

- January – Transportation, communication expenses, M&IE: $0;
- February – Transportation, communication expenses, M&IE: $0;
- March – Transportation, communication expenses, M&IE: $0;
- April – Transportation, communication expenses, M&IE: $0;
- May – Transportation, communication expenses, M&IE: $0;
- June – Transportation, communication expenses, M&IE: $1,080.67;
- July – Transportation, communication expenses, M&IE: $0;
- August – Transportation, communication expenses, M&IE: $412.05;
- September – Transportation, communication expenses, M&IE: $195.63;
- October – Transportation, communication expenses, M&IE: $1,228.23;
- November – Transportation, communication expenses, M&IE: $1,220.00;
- December – Transportation, communication expenses, M&IE: $504.00;

(*Id.* ¶ 30.)

For travel expenses, except lodging, to attend a conference in London, the Deebs claimed $1,598.70:

- Train: $26.85
- Taxi: $30.00

- Taxis: $360.00
- Taxi: $30.00
- Train: $26.85
- Luggage Charge: $45.00
- Per Diem in London for M&IE: $1,080.00

(*Id.* ¶ 31.)

Deeb provided no record of his lodging expenses but claimed $61,921.00, which he calculated through the per diem method:

- January: $4,144;
- February: $7,252;
- March: $5,180;
- April: $5,957;
- May: $3,108;
- June: $6,824;
- July: $5,180;
- August: $3,305;
- September: $5,523;
- October: $5,417;
- November: $5,943; and
- December: $4,088.

(*Id.* ¶ 32.)

The Deebs submitted an emailed flight receipt for a flight between GYD-Heydar Aliyev Int and KBP-Borispol-Kiev on June 9, 2011, and a return trip on June 13, 2011, for $268.72. (*Id.* ¶ 33.) The expense log for June of 2011 claims this flight was $462.67. (*Id.*) The Deebs submitted an emailed flight receipt for a flight between Heydar Aliyev International Airport and Kiev on August 31, 2011, and a return on September 9, 2011. (*Id.* ¶ 34.) This flight is not listed on the log of expenses for the business. (*Id.*) The Deebs submitted an emailed flight receipt for a flight between Baku Heydar Aliyev International Airport and Kiev on September 25, 2011, and a return on October 9, 2011. (*Id.*

¶ 35.) This flight is not listed on the log of expenses for the business. (*Id.*) The Deebs submitted an emailed flight receipt for a flight between Kiev and London on September 26, 2011, and a return on October 1, 2011. (*Id.* ¶ 36.) This flight is not listed on the log of expenses for the business. (*Id.*)

In response to an interrogatory seeking an explanation for how they calculated their claimed deduction for "travel" in the amount of $95,466.00 for tax year 2011, the Deebs stated that they "calculated their claimed deduction for 'travel' in the amount of $95,466 for tax year 2011 using travel cost of Thomas Deeb and travel cost for subcontractors. The U.S. Department of State's Meals & Incidental per diem (M&IE) rates." (*Id.* ¶ 38.)

### III.   Legal Standard

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The court should view the evidence and draw any inferences in the light most favorable to the nonmovant. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact exists. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).

## IV.   Discussion

The Deebs commenced this lawsuit to recover payments of tax they claim the IRS erroneously assessed against them for the 2010 and 2011 tax years. The United States argues that the Deebs's claim for a refund of a portion of their 2010 tax is time-barred and that the Deebs are not entitled to a tax refund for 2011 based on the undisputed facts and applicable law. The Deebs take issue with each of the arguments made by the United States.

### A.  2010 Tax Liability

The Court agrees with the United States that the Deebs's claim related to their 2010 tax liability is time-barred. Section 6511(a) requires that a claim for credit or refund of a tax overpayment "be filed . . . within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later." 26 U.S.C. § 6511(a). When the IRS and the taxpayer agree to extend the period of limitations for assessing tax, the time period for filing a claim for credit or refund is lengthened. *See* 26 U.S.C. § 6501(c)(4). Section 6511(c)(1) provides that the period for filing a refund claim cannot expire prior to six months after the expiration of an extended assessment window. 26 U.S.C. § 6511(c)(1). A taxpayer's failure to file a timely claim for refund is a jurisdictional bar to suit. *United States v. Dalm*, 494 U.S. 596, 602 (1990).

In this case, the Deebs and the IRS agreed to the extend the period for assessing tax for 2010. The parties dispute whether that extension was until

10

August 29, 2015 or September 29, 2015, but that dispute is immaterial.[5] Regardless of whether the extended date for the assessment was August 29, 2015 or September 29, 2015, it is undisputed that the Deebs did not file their 2010 refund claim until April 12, 2018. This is well past the six-month period that Section 6511(c) allows, as the refund claim was due, at the latest, by March 29, 2016. Therefore, the Court agrees with the United States that it is entitled to summary judgment with respect to the Deebs's claim related to their 2010 tax liability.

### B. 2011 Tax Liability

#### 1. Jurisdictional Limitation on Claims Proper for Litigation

The Court next addresses the scope of the claims related to the Deebs's 2011 tax liability that is proper for the Court's consideration. The United States argues that the Deebs's refund claim challenged only the IRS's disallowance of the business deductions for "Travel" and "Schedule C-1 Other Expenses" and did not raise an issue with respect to the deductions for contract labor, legal and professional fees, supplies, taxes and licenses, or utilities. The Deebs disagree and argue that they raised an issue with respect to all business deductions in tax years 2010 and 2011 when they stated the following: "The Service erred in removing business deductions of $132,788 and $184,613." (Pl.'s

---

[5] The dispute also does not appear to be genuine. The Deebs mention both August 29, 2015 and September 29, 2015 as the extended assessment date. (Doc. 31 at 8, 12.) Further, the Deebs's own exhibit indicates that the IRS could assess tax until August 29, 2015. (Doc. 32-1 at 2.)

Response to Def.'s Statement of Undisputed Material Facts in Supp. of Def.'s Mot. for Summ. J., Ex. G, at 5.)

Section 7422 of the Internal Revenue Code requires taxpayers seeking to file a suit for refund to first file an administrative claim for refund that meets the requirements of the applicable Treasury regulations. 26 U.S.C. § 7422(a). Pursuant to Treasury Regulation § 301.6402-2(b)(1), a claim for refund "must set forth in detail each ground upon which a credit or refund is claimed and facts sufficient to apprise the Commissioner of the exact basis thereof." "The alleged error must be clearly and specifically set forth in the refund claim. A generalized plea of error will not suffice." *Mallette Bros. Const. Co., Inc. v. United States*, 695 F.2d 145, 155 (5th Cir. 1983) (citations omitted). Any litigation following the government's denial of a refund claim is "limited to the grounds fairly contained within the refund claim." *Charter Co. v. United States*, 971 F.2d 1576, 1579 (11th Cir. 1992) (citations omitted). Federal courts thus lack "jurisdiction to entertain taxpayer allegations that impermissibly vary or augment the grounds originally specified by the taxpayer in the administrative refund claim." *Id.*

Courts employ an "essential requirements" test to determine whether a taxpayer's lawsuit varies impermissibly from the grounds stated in the underlying administrative refund claim. *Charter*, 971 F.2d at 1579–80. Under this test, "[a]lthough crystal clarity and exact precision are not demanded, at

a minimum the taxpayer must identify in its refund claim the 'essential requirements' of each and every refund demand." *Id.* at 1580.

Here, the refund claim the Deebs presented to the IRS generally mentioned that the IRS erred in removing deductions of $132,788.00 and $184,613.00. However, the claim specifically mentioned only the "Schedule C-1 Other Expenses" and "Travel" and set forth in detail only the challenge to the disallowance of the deductions for travel. The Deebs did not specifically mention or reference any other deduction. The Court's review of the claim informs that the claim neither cites rules nor makes any arguments pertaining to deductions for contract labor, legal and professional fees, supplies, taxes and licenses, or utilities. Indeed, the rules the Deebs referenced and quoted in the claim pertained exclusively to travel deductions. The claim did not even set forth facts concerning the challenge related to the "Schedule C-1 Other Expenses." Consequently, the Deebs impeded on the IRS's ability to have "adequate notice . . . of the nature of the claim and the specific facts upon which it is predicated, thereby permitting an administrative investigation and determination." *Cenecast Servs., L.P. v. United States*, 729 F.3d 1352, 1367 (Fed. Cir. 2013) (citations omitted).

Simply put, except for the travel expenses, the Deebs did not detail any grounds for claiming a refund for the deductions and failed to meet the "essential requirements" test. As such, the IRS did not have adequate notice or sufficient knowledge of the merits of the disputes concerning the other

deductions for the claim for refund to be effective as to these other deductions. For these reasons, the Court lacks jurisdiction to consider the claims related to these other deductions. *See Angelus Milling Co. v. Comm'r*, 325 U.S. 293, 295-99 (1945).

### 2. Travel Expenses

With respect to the claim related to travel expenses that is properly before the Court, the Deebs bear the burden to show that they overpaid their taxes and are entitled to a refund. *See McKenny v. United States*, 973 F.3d 1291, 1296–97 (11th Cir. 2020). Furthermore, "an income tax deduction is a matter of legislative grace and . . . the burden of clearly showing the right to the claimed deduction is on the taxpayer." *INDOPCO, Inc. v. Comm'r*, 503 U.S. 79, 84 (1992) (citations and internal marks omitted).

### a. Tax Home

For the purpose of evaluating the deductibility of Deeb's travel expenses between Atlanta and Baku and the deductibility of expenses Mr. Deeb incurred while in Baku, the Court undertakes an analysis of the location of Mr. Deeb's "tax home" during the period of time relevant to the Deebs's claims. The United States asserts that the meaning of "tax home" under 26 U.S.C. § 162(a)(2) governs this analysis, whereas the Deebs maintain that the analysis is governed by 26 U.S.C. § 911. The Court agrees with the United States.

Section 162 governs deductions for trade or business expenses. 26 U.S.C. § 162. Section 911, in contrast, pertains to citizens or residents of the United

States living abroad and the ability of such an individual to exclude foreign earned income and housing cost amounts from his or her gross income. 26 U.S.C. § 911. The Deebs's claims in this case relate to business deductions claimed pursuant to Section 162, not foreign earned income. (*See* Compl. ¶¶ 29–31, 43.) As such, Section 162 governs the analysis of the "tax home" determination. Section 911 is irrelevant, and the Deebs have not cited any authority to persuade the Court otherwise.

Taxpayers may deduct "traveling expenses . . . while away from home in the pursuit of a trade or business." 26 U.S.C. § 162(a)(2). The regulations define traveling expenses to include "travel fares, meals and lodging, and expenses incident to travel." 26 C.F.R. § 1.162-2(a). A travel deduction under 26 U.S.C. § 162(a)(2) is warranted only if: (1) the expense is reasonable and necessary; (2) the expense is incurred while away from home; and (3) the expense is incurred in pursuit of business. *Comm'r v. Flowers*, 326 U.S. 465, 470 (1946).

For income tax purposes, the term "home" in section 162(a)(2) is "the vicinity of [the taxpayer's] principal place of employment and not where his personal residence is located, if such residence is located in a different place from his principal place of employment." *Michel v. Comm'r*, 629 F.2d 1071, 1073 (5th Cir. 1980) (citations omitted). A taxpayer is "away from home" if he must travel away from his principal place of business for temporary work. *Michel*, 629 F.2d at 1073. "A taxpayer who accepts permanent or indefinite employment in a location different from that of his residence . . . is considered

to have moved his tax home to the new location, and is therefore no longer considered away from home." *Id.* "If employment is reasonably expected to last a substantial period, a decision either to relocate one's home or maintain two residences is a personal one. In contrast, if the employment is reasonably anticipated to be only temporary, the decision is based on a business necessity." *Walraven v. Comm'r*, 815 F.2d 1246, 1247–48 (8th Cir. 1987) (citations omitted). Thus, the fundamental question presented here is whether Mr. Deeb was in traveling status during the time he was in Baku, Azerbaijan, or whether Mr. Deeb moved his home to Baku, Azerbaijan.

On the basis of the entire record, the Court finds that Deeb's primary place of business changed to Baku, Azerbaijan, when he traveled there to operate the business he formed there in 2010. Mr. Deeb formed T&M Associates Baku in Azerbaijan and maintained the company's only office in that country. Mr. Deeb spent over 70% of his time in Azerbaijan during 2010 and over 60% of his time in Azerbaijan in 2011. Mr. Deeb occasionally traveled to Atlanta and primarily did so for personal reasons, as the evidence indicates that he worked only one day during his visits to Atlanta in 2010 and 2011.

The Deebs argue that Baku, Azerbaijan, never became his tax home because Mr. Deeb had a Georgia driver's license, had no intentions of moving his family to Baku, and worked on several temporary projects for the United States in Baku. (Pl.'s Br. in Opp'n to Def.'s Mot. for Summ. J., at 17.) These purported factual statements lack evidentiary support and should be

16

disregarded. The Deebs also mention that Mr. Deeb worked in places other than Baku in 2010 and 2011, but the fact remains that he spent more time working in Baku than anywhere else, which is significant for purposes of the "tax home" analysis. *See Brown v. Comm'r*, 806 F. App'x 842, 845 (11th Cir. 2020). The Deebs also dispute that Deeb's trips to Atlanta were for vacation or holidays. The Deebs maintain that Deeb returned to Atlanta because his family lived in Atlanta and he had a residence in Atlanta. (Pl.'s Br. in Opp'n to Def.'s Mot. for Summ. J., at 18.) However, even if Deeb's primary purpose in coming back to Atlanta was to spend time with his family, that still is a personal reason, not one that it is in the pursuit of business. *Brown*, 806 F. App'x at 847 (finding that taxpayer's "trips to Atlanta and decision to maintain a home in Atlanta appear to have been motivated by a personal desire to spend time with his family that did not benefit" his business).

Deeb's expenses in traveling back and forth between Baku and Atlanta are not eligible business deductions. Rather, they were personal commuting expenses. 26 C.F.R. § 1.262-1(b)(5) ("The taxpayer's costs of commuting to his place of business or employment are personal expenses and do not qualify as deductible [business] expenses."). Travel expenses are deductible only if the primary purpose of the trip is business. *Masat v. Comm'r*, 784 F.2d 573, 576 (5th Cir. 1986) (citing 26 C.F.R. § 1.162–2(b)(1)). "The exigencies of business rather than the personal conveniences and necessities of the traveler must be the motivating factors" for a taxpayer's travel to be deductible. *Flowers*, 326

U.S. at 474. The Deebs have not substantiated, from an evidentiary standpoint, how the trips to Atlanta enhanced or benefited Deeb's business. Indeed, based on the work calendar that the Deebs provided, Deeb worked only one day when he visited Atlanta in 2010 and 2011.

Further, the costs of Deeb's lodging, meals, and travel while in Baku also are not deductible. These expenses incurred by Deeb at his new tax home are not deductible under Section 162(a)(2) because the expenses did not arise when Deeb was "away from home." *Ellwein v. United States*, 778 F.2d 506, 510 (8th Cir. 1985).

### b. Substantiation of Ordinary and Necessary Expenses

Even if the Court had not found that Deeb established a new "tax home" in Baku, the Deebs still would not be able to recover the tax payments at issue. As an initial matter, the Deebs have not established that any of the expenses they claim to be deductible, including travel and other expenses, were ordinary and necessary. Moreover, they have not pointed to sufficient evidence substantiating the expenses. For both of these reasons, the United States is entitled to summary judgment.

Section 162 of the Internal Revenue Code allows as a deduction "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business." 26 U.S.C. § 162. An ordinary expense is one that is common and accepted in the taxpayer's industry. *Deputy v. du Pont*, 308 U.S. 488, 495 (1940). A necessary expense is one that is helpful and

appropriate for a taxpayer's trade or business. *Comm'r v. Heininger*, 320 U.S. 467, 471 (1943). Whether an expenditure is ordinary and necessary is generally a question of fact. *Id.* at 475.

"Taxpayers bear the burden of submitting evidence that supports their claims of entitlement to a deduction and the amount of that entitlement." *Stephens v. Comm'r*, 565 F. App'x 795, 796 (11th Cir. 2014) (citing *Gatlin v. Comm'r*, 754 F.2d 921, 923 (11th Cir.1985)). "Taxpayers are required to substantiate expenses underlying each claimed deduction by maintaining records sufficient to establish the amount of the deduction and to enable the Commissioner to determine the correct tax liability." *Barker v. Comm'r*, 853 F. App'x 571, 575 (11th Cir. 2021) (citing I.R.C. § 6001).

The Deebs have failed to point to evidence demonstrating that their claimed deductions for 2011 were ordinary and necessary. The Deebs have provided Deeb's work calendar and charts that generally summarize the monthly income and expenses for T&M Associates Baku. (*See* Def.'s Mot. for Summ. J., Ex. H; Pl.'s Response to Def.'s Statement of Undisputed Material Facts in Supp. of Def.'s Mot. for Summ. J., Exs. J & L.) These charts categorize each incurred expense, note whether there is a receipt for the expense, and set forth the amount of each expense. However, the charts do not explain or reference related evidence establishing the business purpose for each expense.

The Deebs argue that they provided over 200 pieces of documents during discovery showing that they incurred expenses, but the Deebs still have failed

to carry their burden of showing that the expenses were deductible trade or business expenses. The Deebs have not explained, through verified testimony or other evidence, how the expenses they incurred were ordinary and necessary in carrying on the T&M Associates Baku business. Counsel makes the argument that "[a]ll of these expenses are common in and accepted in the consultation industry." (Pl.'s Br. in Opp'n to Def.'s Mot. for Summ. J., at 19.) However, arguments of counsel are not evidence. *See United States v. Smith*, 918 F.2d 1551, 1562 (11th Cir.1990) ("[S]tatements and arguments of counsel are not evidence[.]").

While the Deebs generally cite to voluminous exhibits in a purported effort to demonstrate that the expenses were ordinary and necessary, the Deebs do not point to specific testimony or particular pages of documents that directly address what, if any, business purpose the expenses served or how they were related to Deeb's business. The Deebs's failure to identify specific, probative evidence substantiating their claimed deductions makes the entry of summary judgment in favor of the United States appropriate. *See Anderson*, 477 U.S. at 249-50.

Additionally, the evidence indicates that the Deebs primarily relied on the per diem method for lodging, meals, and incidental expenses. (*See* Def.'s Statement of Undisputed Material Fact in Supp. of Def.'s Mot. for Summ. J. ¶ 38; *see also* Pl.'s Response to Def.'s Statement of Undisputed Material Facts in Supp. of Def.'s Mot. for Summ. J., Ex. L, at 5, 7, 9, 12, 15, 18, 19, 21, 23, 25,

27, 29.) However, self-employed individuals are not eligible to use per diem amounts for lodging. *See* Rev. Proc. 2019-48, sec. 1 (excluding self-employed persons from using the per diem rate to substantiate the amount of their lodging expenses); *see also Chaganti v. Comm'r*, 112 T.C.M. (CCH) 629 (2016) ("Self-employed individuals are not eligible to use per diem amounts for lodging."). They must substantiate their actual lodging expenses in the manner required by 26 U.S.C. § 274(d). *Starr v. Comm'r*, 80 T.C.M. (CCH) 429 (2000) ("Therefore, a self-employed individual must still prove the amount of lodging costs with documentary evidence."). As there is no dispute that Deeb was self-employed during the relevant time period, Mr. Deeb's $61,921 in lodging expenses claimed during 2011 using the per diem method are not allowable deductions.

### C. Accuracy-Related Penalty

The only remaining issue is the assessment of an accuracy-related penalty pursuant to 26 U.S.C. § 6662. The Deebs's argument against the penalty assessment is derived entirely from their contention that the IRS erred in disallowing the deductions. Since the disallowance of the deductions was not erroneous, the Court finds that the accuracy-related penalty was justified.

### V.   Conclusion

For the reasons set forth above, the United States' Motion for Summary Judgment [Doc. 29] is GRANTED.

21

SO ORDERED, this ____4th____ day of February, 2022.


THOMAS W. THRASH, JR.
United States District Judge